Andrew SABOL, Plaintiff

v.

CABLE & WIRELESS PLC d/b/a Cable & Wireless Global d/b/a Cable & Wireless USA, Inc. Defendant

No. 03 CIV. 7595(SCR).

United States District Court, S.D. New York.

March 7, 2005.

Steven Felsenfeld, Law Offices of Robert Hilpert, Croton–On–Hudson, NY, for Plaintiff.

David M. Safon, Lisa M. Brauner, Ford & Harrison LLP, Joanne Seltzer, Laura H. Allen, Nicholas Hall De Baun, Sidley Austin Brown & Wood LLP, New York, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I.  Background

#### A.  Statement of Facts

Andrew Sabol (the "Plaintiff"), an individual residing in Westchester County in the State of New York, was born on March 21, 1943.  Cable & Wireless PLC ("C & W PLC") is a business incorporated and based in the United Kingdom.  It is affiliated with two other entities: Cable & Wireless Global ("C & W Global"), which is also based in the United Kingdom, and Cable & Wireless USA, INC. ("C & W USA") (C & W PLC, C & W Global and C & W USA are collectively referred to herein as the "Defendant"[1]).  C & W USA, a Delaware corporation doing business in the County of Westchester, New York, recently declared bankruptcy.

In March of 1999, the Plaintiff became employed by (at least) one of the above-mentioned entities as a National Account Manager.  The Plaintiff's employment as a Global Accounts Manager was terminated on or about July 19, 2002.  Plaintiff alleges that, commencing in or about February 2002, he was subject to intentional discrimination because of his age that negatively affected the terms, conditions and privileges, and ultimately led to his wrongful discharge.

#### B.  Procedural Posture

The Plaintiff brought suit against C & W PLC under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, et. seq., and the New York State Human Rights Law ("HRL"), N.Y. EXEC.

---

**1.** The court's use of the term "Defendant" and not "Defendants" should not be construed as any judgment as to whether they are a single entity for the purpose of Plaintiff's claims in this case.  Rather, it simply reflects that Plaintiff named only a single Defendant in this case.

LAW § 290, et seq., on September 20, 2003.

The Defendant is seeking summary judgment on two grounds: (1) the Plaintiff has no claim against C & W PLC under the ADEA because C & W PLC is exempt from the statute under the "foreign employer" exemption, 29 U.S.C. § 623(h)(2); and (2) the Plaintiff has no claim against C & W PLC under the HRL because C & W PLC is not an "employer" within the meaning of the statute.

## II. Analysis

### A. Background

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*

### B. Foreign Employer Exception Under The ADEA

■ The Defendant argues that Plaintiff has no claim under the ADEA because C & W PLC is exempt from liability pursuant to the statute's "foreign employer" exemption, which provides that "[t]he prohibitions of this section shall not apply where the employer is a foreign person not controlled by an American employer." 29

U.S.C. § 623(h)(2). Under this exemption, an employee at a workplace in a foreign country is not protected under the ADEA if the employer is a foreign person not controlled by an American employer. *See Morelli v. Cedel,* 141 F.3d 39, 43 (2d Cir. 1998). Crucially, however, this exemption does not "restrict the application of the ADEA with respect to the domestic operations of foreign employers." *Id.*

In this case, the parties disagree about which entity should be considered Plaintiff's employer for the purposes of the ADEA exemption analysis in this case. C & W PLC contends that Plaintiff was employed by C & W USA, an entirely distinct subsidiary company. In response, Plaintiff appears to assert two different but related arguments: 1) C & W PLC and C & W USA should be considered a single employer for the purposes of the ADEA; and 2) that C & W PLC was his true or actual employer for the purposes of the ADEA.[2]

■ The Second Circuit applies a four-part test for determining when parent companies may be considered employers of a subsidiary's employees. *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240–41.[3] Specifically, a parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *See id.* at 1241. The second factor—centralized control of labor relations—is the focus of the inquiry. *See id.*

---

**2.** Finding that C & W PLC, a United Kingdom corporation, was the Plaintiff's true employer would not require his claim to then be dismissed under 29 U.S.C. § 623(h)(2). This section does not exclude from the protections of the ADEA Americans working in the United States for a foreign corporation. *See Elliott v. British Tourist Auth.,* 986 F.Supp. 189, 192 (S.D.N.Y.1997).

**3.** Even though *Cook* is a Title VII case, it is equally applicable here, in the context of the ADEA. *See Lowe v. Commack Union Free School Dist.,* 886 F.2d 1364, 1369 (2d Cir. 1989) (Title VII principles are applicable to ADEA cases since the substantive prohibitions of the ADEA were derived *in haec verba* from Title VII) (internal quotations omitted).

■ Plaintiff points to various public statements by officers of C & W PLC that arguably indicate that C & W PLC and C & W USA were operated as a single entity. Defendant provides a brief affidavit from Ian Muir, a Human Resources officer at C & W PLC, indicating that, at all relevant times, C & W USA had its own board of directors, officers and employees and paid its employees out of its own treasury.[4] But this evidence, from both parties, does not adequately address all, or the most important, of the *Cook* factors and, as such, provides an inadequate basis on which to determine whether the C & W PLC and C & W USA are a single employer for the purpose of Plaintiff's ADEA claim.[5]

■ Plaintiff also appears to argue that C & W PLC was his true employer. To determine whether an employer-employee relationship is present, courts apply the multi-factor test derived from the federal common law of agency and articulated by the Supreme Court in *Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). *See also Eisenberg v. Advance Relocation & Storage, Inc.,* 237 F.3d 111, 113–14 (2d Cir.2000) (applying the test in the context of Title VII). The factors in this test are: (1) the hiring party's right to control the manner and means by which the worker completes his or her assigned tasks; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of

the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the hired party. *See Eisenberg,* 237 F.3d at 114. Though no single factor is dispositive, the "greatest emphasis" should be placed on the first factor—that is, on the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks. *See Eisenberg,* 237 F.3d at 114.

■ The record indicates that there are disputes of fact between the parties on some of these factors, including on the issue of which entity supervised and controlled the Plaintiff's employment. In particular, the Plaintiff claims that he participated in a stock option plan implemented by C & W PLC, attended training classes and conferences held in Europe and, most importantly, "reported", approximately three times a week, to Mark Jenkins, a C & W PLC employee in the United Kingdom. In response, Defendant claims that Plaintiff was hired, paid and fired by C & W USA, and disputes Plaintiff's claim to have been supervised by C & W PLC officers. In light of this dispute over the

---

4. In Defendant's reply papers, Defendant responds to the single employer issue by simply citing a Second Circuit case for the proposition that "the law only treats employees of a corporate entity as the employees of a related entity under extraordinary circumstances." *Murray v. Miner,* 74 F.3d 402, 404 (2d Cir. 1996). This may be true, but it is not evidence on which the court can determine whether or not such circumstances exist in this case.

5. Defendant relies heavily on *Haugh v. Schroder Inv. Mgmt. N. Am., Inc.,* 2003 WL 21146667, 2003 U.S. Dist. LEXIS 7783 (S.D.N.Y.2003). But in that case, unlike in this case, it was "undisputed that the plaintiff's direct employer [was] SIMNA, an American corporation." *Id.* at *6, 2003 WL 21146667, at *2.

identity of the Plaintiff's true employer, and other inadequacies in the record, Plaintiff's ADEA claim should not be dismissed.

### C. Definition Of Employer Under New York State Human Rights Law Claim

The second argument advanced by C & W PLC is that the Plaintiff has not claim under the HRL because C & W PLC is not an "employer" within the meaning of the statute.

To determine whether an entity may be considered an employer within the meaning of the HRL, the court must analyze four factors: (1) Whether the proposed employer had the power of the selection and engagement of the employee; (2) Whether the proposed employer made the payment of the salary or wages to the employee; (3) Whether the proposed employer had the power of dismissal over the employee; (4) Whether the proposed employer had the power to control the employee's conduct. *See Goyette v. DCA Adver. Inc.*, 830 F.Supp. 737, 746 (S.D.N.Y. 1993). Whether the alleged employer exercised control over the employee's conduct and the incidents of his employment remains the most important consideration in this analysis. *See Alie v. NYNEX Corp.*, 158 F.R.D. 239, 246 (E.D.N.Y.1994).

Although analysis of some of these factors appears, at least at this stage, to favor the Defendant, there remain material disputes of fact, including, as discussed, with respect to who or which entity was controlling and supervising the Plaintiff's employment.

As such, this claim should not be dismissed at this time.

### III. Conclusion

Defendant's motion for summary judgment is DENIED.

It is so ordered.